NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SEAN WASHINGTON, | : | |
| Plaintiff, | : | Civ. No. 05-3715 (AET) |
| v. | : | **MEMORANDUM & ORDER** |
| CORRECTIONAL MEDICAL SERVICES, et al., | : | |
| Defendants. | : | |

THOMPSON, U.S.D.J.

I.   Introduction

This matter comes before the Court upon the Motion for Summary Judgment brought by Defendants Lieutenant Frank Jones, Sergeant Gregory Hall, and Senior Corrections Officers ("SCOs") Charles White and Raymond Johnson (collectively, "the State Defendants"). The Court has considered the submissions of the parties without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, the Court will grant the State Defendants' Motion for Summary Judgment.

II.   Discussion

A.   Background and Procedural History

On or about May 24, 2004, Plaintiff Sean Washington, an inmate at New Jersey State Prison ("NJSP"), was prescribed crutches by the medical staff of Defendant Correctional Medical Services ("CMS") because the symptoms of his Multiple Sclerosis were impairing his mobility.

On June 25, 2004, Plaintiff was assigned to the medical wing of the prison, where the State Defendants assert that the use of crutches is less restricted than in other areas of the prison. (See State Defs.' Statement of Material Facts ("Defs.' Statement") ¶¶ 4-8; Pl.'s L. Civ. R. 56.1 Counter-Statement of Facts ("Pl.'s Statement") ¶¶ 4-5.)  Plaintiff asserts that the State Defendants deprived him of his crutches on two separate occasions, in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. (Compl. ¶¶ 96-100.)

The first incident allegedly occurred on October 14, 2004, when Plaintiff attended a prison banquet sponsored by the Hispanic-Americans for Progress ("H.A.P. banquet").  At the H.A.P. banquet, Defendant Jones allowed Plaintiff to use his crutches to get to his seat, but he did not allow Plaintiff to keep them for the duration of the event.  The State Defendants assert that Defendant Jones told Plaintiff that he could not keep his crutches due to "security reasons," but if he needed to use them to leave or go to the bathroom they would be nearby at the officers' station. (Defs.' Statement ¶¶ 11-12.)  Plaintiff admits that he participated in all aspects of the banquet, but he contends that his request for his crutches to use the bathroom was denied, thus requiring him to rely on the assistance of a fellow prisoner to get to the bathroom. (Compl. ¶ 14; Smith Aff. Ex. B at 1.)

The second alleged deprivation occurred on December 13, 2004, when Plaintiff entered the Sergeant Donald Bourne School area ("D.B. School") and proceeded to the Inmate Legal Association ("I.L.A.") office with his crutches.  After Plaintiff arrived, Defendant Hall told Defendant Johnson that crutches are not allowed within the D.B. School area and that they must be left at the front desk during an inmate's visit.  Defendant White told Plaintiff to return to Defendant Johnson at the front desk.  Plaintiff returned to the front desk with his crutches, where

he was told that he could not keep his crutches in the D.B. School area. Plaintiff then returned to the I.L.A. office without his crutches, again requiring the assistance of another inmate. (See Defs.' Statement ¶ 21; Pl.'s Opp'n at 3.)

After both incidents, Plaintiff submitted Administrative Remedy Forms ("ARFs") to prison officials. The State Defendants responded, regarding the H.A.P. banquet, that security issues prevent inmates from retaining their crutches in certain areas of the prison, and at certain events. (Defs.' Statement ¶ 15; Smith Aff. Ex. B.) The State Defendants' response regarding the I.L.A. office incident stated that there was "mis-communication" and that Plaintiff is permitted to keep his crutches with him in the D.B. School area. (Defs.' Statement ¶ 25; Smith Aff. Ex. B.)

On August 3, 2005, Plaintiff filed a Complaint against the State Defendants and against Correctional Medical Services ("CMS") and several CMS doctors and nurses. On April 28, 2006, the Court issued a Memorandum and Order granting in part and denying in part the State Defendants' motion to dismiss or, in the alternative, for summary judgment. The only claim remaining against the State Defendants is that Defendants Jones, Hall, White, and Johnson violated the ADA by temporarily denying Plaintiff the use of his crutches on the two occasions described above. The instant Motion for Summary Judgment of that last claim followed.

B.   Motion for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and

construes all facts and inferences in the light most favorable to the nonmoving party.  Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 414 (3d Cir. 1999).  If the nonmoving party would bear the burden of persuasion at trial, the moving party may discharge this prima facie burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.  The burden then shifts to the nonmoving party "'to make a showing sufficient to establish the existence of an element essential to that party's case.'"  Padillas, 186 F.3d at 414 (quoting Celotex, 477 U.S. at 322).  To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

    C.    Qualified Immunity

The State Defendants advance several arguments as to why their Motion should be granted.  Because the Court finds that the State Defendants are entitled to summary judgment on qualified immunity grounds, it will not discuss their other arguments.

Under Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  In determining whether qualified immunity applies in a specific case, a court must "first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all."  Wilson v. Layne, 526 U.S. 603, 609 (1999).  If a plaintiff

satisfies this first prong, the court must next determine whether the right is clearly established by inquiring "whether it would be clear to a reasonable [government official] that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).

The State Defendants argue that they are entitled to qualified immunity from, and summary judgment of, Plaintiff's ADA claim because: (1) there was no ADA violation; and (2) the law is not clearly established that the State Defendants were prohibited from removing Plaintiff's crutches after his arrival at his destination, and while he participated fully in the activity at hand.

### 1.   Plaintiff Has Shown Deprivation of an Actual Constitutional Right

To establish a violation under Title II of the ADA, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) who is subjected to discrimination by a public entity, or is excluded from participation in or is denied the benefits of the services, programs, or activities of such entity; (3) because of his disability. 42 U.S.C. § 12132. The State Defendants admit that Plaintiff is a qualified individual with a disability, but they argue that because Plaintiff admits that he participated in the entirety of the H.A.P. banquet and used the full services of the I.L.A. office, he cannot show that he was "excluded" from participation in or denied the benefit of NJSP's services. (Defs.' Br. at 22.)

The Court, however, taking the facts alleged in the light most favorable to Plaintiff, finds that a violation of Plaintiff's constitutional right may be shown. See Saucier, 533 U.S. at 201. It must be noted that the prison and all of its facilities, including the bathrooms and the I.L.A. office constituted services and programs of NJSP. See Owens v. Chester County, No. 97-1344, 2000 U.S. Dist. LEXIS 710, at * 32 (E.D. Pa. Jan. 28, 2000). Although Plaintiff admits that he

did participate in the banquet and did avail himself of the I.L.A. office's services, he still argues that he was forced to rely on the assistance of other prisoners to reach the bathroom during the banquet, and to return to the I.L.A. office after his crutches were taken away. (See Pl.'s Opp'n at 2-3; Smith Aff. Ex. B.) While the State Defendants do not address whether Plaintiff requested his crutches to go to the bathroom during the H.A.P. banquet, they do not dispute that Plaintiff had to walk without his crutches back to the I.L.A. office from the front desk of the D.B. School. (See White Aff. ¶¶ 5, 8; Johnson Aff. ¶ 8; Hall Aff. ¶ 12.) Thus, it does appear that Plaintiff was effectively denied the benefits of NJSP's services of bathroom visits during prison events, and of the I.L.A. office.

It is no answer that Plaintiff somehow managed to reach the bathroom and the I.L.A. office either by clinging to the walls, or relying on the assistance of other inmates. Plaintiff's claim is not precluded simply because he, in fact, was somehow able to use the prison's services. See Schmidt v. Odell, 64 F. Supp. 2d 1014, 1033 (D. Kan. 1999) (holding that the amputee plaintiff's claim was not precluded simply because he was able to use the prison's services by crawling on the floor). Therefore, the first prong of qualified immunity is satisfied, as a favorable view of the facts alleged show that the State Defendants' conduct violated Plaintiff's constitutional right. See Saucier, 533 U.S. at 201.

    2.  The Right Is Not Clearly Established

Notwithstanding that the Court finds Plaintiff may be able to prove violation of a constitutional right, the Court finds that such right is not clearly established, and that the State Defendants are entitled to qualified immunity. Under the second prong of the test, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment

based on qualified immunity is appropriate." Id. at 202. "Clearly established for purposes of qualified immunity means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Wilson v. Layne, 526 U.S. 603, 614-15 (1999) (internal citations omitted).

Here, the State Defendants claim to have acted "pursuant to their understanding of NJSP policy on the use of crutches by an inmate within areas of inmate congregation in the correctional facility." (Defs.' Br. at 22 (citing Ricci Aff. ¶¶ 4-8; Jones Aff. ¶¶ 7-10; Hall Aff. ¶¶ 5-12; Johnson Aff. ¶¶ 3-8; White Aff. ¶¶ 3-8).) Such policy restricts the use of crutches in areas where inmates congregate because they can be used as a weapon. (Ricci Aff. ¶ 4.) Because the State Defendants were acting pursuant to this legitimate policy, and because Plaintiff was not actively prevented from participating in and benefitting from the services at NJSP, reasonable officials would not clearly understand that temporarily removing Plaintiff's crutches while he was in areas where inmates congregate violates Plaintiff's rights under the ADA. Furthermore, there do not appear to be any cases of controlling authority on this question, thus, the contours of the right to retain crutches while using the prison's services are not sufficiently clear. See Owens, 2000 U.S. Dist. LEXIS 710, at *37 n.8 (noting that it would be unreasonable to accommodate the plaintiff on every request for his crutches).

Therefore, because the Court finds that the State Defendants were not put on notice that their action of removing Plaintiff's crutches on two occasions while he was participating in the services of NJSP was unlawful, the State Defendants are entitled to qualified immunity on Plaintiff's last remaining claim against them, pursuant to the ADA.

III.    Conclusion

For the foregoing reasons, and for good cause shown,

IT IS on this 29th day of December, 2006,

ORDERED that the State Defendants' Motion for Summary Judgment [42] on Count Three of the Complaint is GRANTED; and it is further

ORDERED that the State Defendants are DISMISSED from the case.

                                              s/ Anne E. Thompson
                                             ANNE E. THOMPSON, U.S.D.J.